GRACE P. JOHNSON, *et al.,* v. EMIL METZINGER, *et al.,* and W. H. TUNNICLIFFE, Liquidator, State Band of Orlando & Trust Company, *et al.*

156 So. 681.

En Banc.

Opinion Filed March 10, 1934.

*Claude L. Gray* and *Hugh Akerman,* for Appellants;
*George P. Garrett,* for Appellees.

BROWN, J.—Grace P. Johnson, a citizen of Lawrence County, Pennsylvania, on May 1, 1931, exhibited her sworn bill of complaint in the Circuit Court for Orange County, Florida, against Emil Metzinger, Arthur McKean, Hugh Ferguson, Fort Gatlin Hotel, Inc., a Florida corporation, and certain other defendants to foreclose a mortgage upon the leasehold interest in a certain tract of land in Orlando, Florida, upon which a hotel was located, which was built after the leases were executed, and which had been sublet to the Fort Gatlin Hotel Corporation. The owners of the land were not made parties defendant; nor was this essentially necessary, as the mortgage only covered the leases and the leasehold estates.

The salient facts alleged in the bill are briefly as follows: On October 1, 1925, Emil Metzinger and Arthur McKean

executed five promissory notes to Hugh Ferguson in. the aggregate sum of $100,000, the notes being for $20,000 each, and payable one, two, three, four and five years after date, with interest at 8%, payable semi-annually. Complainant was the owner and holder of one of said notes, being the note payable two years after date, which she purchased from Ferguson, paying him $20,000 therefor, and which had been assigned and delivered to her at the time, which was on or about March 15, 1928, by the original payee, by endorsement in writing on the reverse side of the note, reading: "For value received, I do hereby sell, assign and set over to Grace P. Johnson all my right, title and interest in and to the within note. (Signed) Hugh Ferguson."

In order to secure the payment of each of said notes, Metzinger and McKean and their wives. executed a mortgage deed to Hugh Ferguson upon certain leases and leasehold estates which they held under two duly recorded ninety-nine year leases, covering adjoining tracts of land. One of these leases was executed May 30, 1925, by J. S. Wynne and Lula B. Wynne, his wife, to Emil Metzinger, by which the Wynnes leased a certain described lot to Metzinger. The other was a lease by Edith I. Babcock and Vinton S. Babcock, to Metzinger, made in June, 1925, covering the west 224.75 feet of an adjoining lot, less a small described portion of said lot. The mortgage to Ferguson covered the leasehold interest in both tracts, and also all buildings and improvements erected, or which might be erected, on the described property, together with the rents, issues and profits thereof, and all the rights, title and interest of the lessees under said leases. The mortgage provides that if the mortgagor failed to pay the rentals reserved under said leases, that Ferguson should have the right to pay the same and charge the amount paid to the mortgagors and against the described leasehold estates. There was also a clause to

the effect that if the mortgagors or their assigns should make default in payment of any of the principal or interest for thirty days after the due date, or any part thereof, or in the performance of any of the mortgage covenants, then the whole of the unpaid principal should become due and payable and said leasehold estates subject to foreclosure.

The bill alleged that the assignment and delivery to complainant of said note, and the endorsement thereof by the original payee and mortgagee, for which she paid the mortgagee $20,000, carried with it as incident thereto the mortgage securing said indebtedness, and entitled complainant to priority of payment out of the proceeds of the mortgaged estate. That there had been default in the payment of three installments of interest, falling due on said note after the assignment; that the principal of said note was part due and unpaid; that the property had been sold for 1929 State and county taxes in the sum of $3,539.33; that taxes for 1930 were due and unpaid; that the city taxes for several years were in default; that the mortgage securing said note was therefore in default and subject to foreclosure under the terms thereof.

It was also alleged that because of the non-payment of taxes the said leases were subject to default, as each of the leases contained a clause whereby the leasehold estate and the buildings and improvements located thereon would revert to the owner and holder in the event of such defaults and the giving of thirty-day notices to the lessees. That by reason of the many defaults above referred to, the security represented by the mortgage was in immediate danger of being lost and destroyed and complainant's interest under said note and mortgage wiped out unless a receiver be promptly appointed by the court to preserve and protect the interests of complainant. That the mortgage expressly pledged the rents, issues and profits from all buildings and

improvements on the property, in addition to the leases and the leasehold estates.

The bill further alleged that there were located on the property a hotel building containing 150 rooms and a number of stores fronting on Orange Avenue, some of which were unoccupied, and also several occupied dwelling houses. That respondent, Fort Gatlin Hotel, Inc., was in possession of all of said buildings under a lease executed to it by Arthur McKean and wife and dated March 15th, 1928, said Arthur McKean having become the leasehold owner by means of assignments and conveyances of the leases and leasehold estates described in the mortgage. That while the Fort Gatlin Company was receiving the rents and profits and had been paying large sums of money on its lease from McKean, that neither Ferguson, nor McKean, nor the Fort Gatlin Company had paid complainant any of the sums required by the note and mortgage, nor the delinquent taxes, thus wasting and depleting the security. That the hotel building was badly in need of certain necessary repairs, and infested with termites which were destroying the woodwork; that it was necessary to install a heating system, which would cost about $10,000; that none of the income was being applied to these purposes; that the makers of said note were insolvent and the security afforded by the mortgage inadequate at the then market value; that the ground rents on the two leases were based on boom-time values and amounted to approximately $12,000 per year, and within a short time would increase to $16,000 per year, making it impossible for the holders of the leasehold, as well as for the lessees holding under the same, to pay the ground rents, taxes, insurance and other obligations provided for in said leases; that the operating expenses of the hotel were approximately $27,000 per year, and that Fort Gatlin Hotel, Inc., then in possession, was unable to pay its operating ex-

penses and pay the ground rents and taxes due; that a number of suits were pending against said Hotel Company and that it was unable to meet its obligations as they matured, and had not sufficient assets at market value to pay its debts; that the furniture and fixtures were owned by persons other than the Hotel Company, which were in danger of being removed unless satisfactory arrangements could be made for the payment of a reasonable rental therefor, which removal would prevent the operation of the hotel; that if a receiver should be appointed to take charge of the hotel and operate it and collect the income therefrom, as well as from the buildings located on the premises, then satisfactory arrangements could be made with the owners of said furniture and equipment so that possession could be retained pending this litigation. Wherefore the appointment of a receiver immediately was prayed.

It was also alleged that subsequent to the execution of the mortgage to Ferguson by Metzinger and McKean, McKean, on or about March 15, 1928, assigned all his interest under said leases to Hugh Ferguson, the mortgagee; that this assignment was made subsequent to the assignment by Hugh Ferguson to complainant of said mortgage note; that whether this assignment of the leases constituted a merger in Hugh Ferguson of the lien for the balance due him under the mortgage, with the leasehold estates described in the mortgage, or not, or whether the assignment was a mere pledge, the acceptance of such assignment by Ferguson entitled complainant to priority of payment out of the proceeds from the sale of the mortgaged property as against said Ferguson.

It is unnecessary to set out the interests claimed by the other defendants, all of them being alleged to be inferior to that of complainant. The bill prayed a foreclosure sale of the property described in the mortgage, and that the pro-

ceeds be applied to the payment of costs and attorneys' fees. and to the amount due complainant, and the balance of such proceeds to be paid into the registry of the court to await its further order, and that a receiver be appointed for the purposes already indicated, with power to operate the hotel, rent the buildings, make necessary repairs, collect the income, pay taxes and insurance premiums; to issue receiver's certificates upon order of the court and do all things necessary to preserve the property and protect complainant's. lien; to pay the ground rents and other encumbrances necessary to entitle him to a continued occupancy of the premises.

On May 8, 1931, on application of complainant and after notice of hearing, served on Ferguson and McKean and Fort Gatlin Hotel, Inc., the court appointed a receiver with powers and directions pursuant to the prayer of the bill, naming appellant Carl C. Hall (who had been president and manager of the Fort Gatlin Hotel Company) as receiver and requiring him to give bond in the sum of $10,000, which was promptly given and approved. No opposition to the appointment of a receiver appears in the record.

When the application for appointment of a receiver came on for hearing, an affidavit by a local real estate agent was filed by complainant, which tended to support the allegations of the bill as to the condition of the property, the need of many repairs, etc., and stated that the leases and leasehold estates would not bring in the open market more than $10,000, because the ground rents named in the leases, and the taxes and insurance would amount to between $18.000 and $20,000 annually, which constituted a charge upon the property so burdensome that it would be impossible to pay said sums, together with operating expenses, incidental repairs and upkeep, so as to give a net revenue; that there was. outstanding approximately $15,000 in delinquent taxes upon.

the property, which must be paid under the terms of the ground leases, and which constituted a prior claim over that of the owner of the ground leases.

On the rule day in June, 1931, decree *pro confesso* for failure to appear or plead was entered against defendants, Emil Metzinger, Wm. T. Bland, Jr., and Fort Gatlin Hotel, Inc. Appearances had been entered for the other defendants.

On June 5, 1931, the Chancellor, upon petition from the receiver, authorized him to issue a receiver's certificate for $5,000 payable on or before one year, to Grace P. Johnson, $500 of which was to be used for deposit for water, gas and lights, $1,500, for waterproofing the walls of the hotel and $1,000 for eradicating the termites with which the building was infested, and $2,000 to provide an operating and maintenance fund for the receiver. The certificate was issued and Mrs. Johnson, the complainant, advanced the sum of $5,000 to the receiver.

On July 5, 1931, defendants Arthur McKean and wife and Hugh Fergsuon and wife, filed demurrer to the bill setting up (1) that the note sued on was not shown to have been transferred to complainant by endorsement and delivery to her, and (2) that complainant did not show any right to foreclose the mortgage. No action was sought or taken by the court on the demurrer, and the demurrants some months later filed an answer. The other defendants filed more or less formal answers, mostly stating that they were without knowledge of the truth of the allegations of the bill.

On September 16, 1931, the receiver filed a petition, alleging the need of $3,000 more for certain improvements and repairs and operating expenses, and stating that he could borrow this sum from Mrs. Johnson, the complainant, if the court would authorize the issuance of a receiver's cer-

tificate for such amount, payable on or before one year from date as part of the costs of administration. This petition was granted on the same date, and the court ordered that the certificate should constitute a lien upon the assets in the hands of the receiver and the property described in the bill of complaint ahead of all other liens.

Nothing further was filed in nor action taken by the court until October 26, 1931, more than five months after the receiver was appointed.

At this juncture, the ground owners, who were not parties to the suit, filed petitions for leave to sue the receiver for possession of the premises. One of these petitions was filed by the Fort Orange Company, a corporation, which alleged that after the execution of the ninety-nine-year lease by Edith I. and Vinton S. Babcock to Emil Metzinger in 1925, the Babcocks had assigned their interest in said premises as lessors to E. F. Hiatt, Inc., and the latter had assigned its interest to the Fort Orange Company. That said lease had been defaulted and due notice of default had been served on all parties interested in said lease, including said receiver, and that pursuant to the notice, the interest of the lessee and his assignee, including the receiver had been forfeited, and that petitioner desired to institute an action against the receiver, who was unlawfully in possession of the premises, having been notified of the forfeiture and having failed to deliver possession on demand. That petitioner's interest was paramount to any interest involved in the suit, and that no order made in the suit could affect the rights of the petitioner, who was not a party thereto.

An order was made by the Chancellor on October 25, 1931, the day the petition was filed, granting said petition for leave to sue the receiver.

On the same day a similar petition was filed by Lula B. and J. S. Wynne, which was likewise that day granted.

On December 5, 1931, the Fort Orange Company and the Wynnes jointly filed a petition in the pending suit, asking the court for a "summary hearing with reference to the right of possession of the property held by the receiver in this cause, consisting of the Fort Gatlin Hotel and the real estate upon which said hotel is located," alleging that petitioners were the owners, respectively, of the fee simple title to the described land, that is, the two adjoining parcels on which the hotel was located, and that they "are entitled to the immediate possession of said premises"; that 'the receiver is in the unlawful possession of the land and the hotel thereon; that petitioners have severally made demand upon said receiver for delivery of possession, and that he had refused and failed to deliver said possession; wherefore, your petitioners pray that this court will take jurisdiction of the controversy between the petitioners and the receiver with reference to the possession of said premises, and order the said receiver forthwith to deliver said possession to your petitioners as their interests severally appear." Then followed a prayer for general relief.

The Chancellor made an order allowing said petition to be filed and a copy was ordered served upon the receiver, and the receiver was ordered to show cause before the court at 9:30 A. M. on December 14, 1931, why he should not deliver up the possession of said property to the petitioners. Notice of this hearing was also given by counsel for petitioners to counsel for complainant.

On the day of the hearing complainant filed a motion to strike from the files the said petition filed December 5, 1931, upon the following grounds: That the petitioners were not parties to the complainant's suit, and had no right to file in said cause a separate and distinct suit for a determination of rights as between themselves and other persons; that the petition was improperly filed in this cause and had no bear-

ing upon the issues involved in complainant's suit; that no process of any nature was asked for against the complainant, and no relief sought against her, and that complainant was entitled to prosecute her cause without interference from parties not entitled to plead their cause in her said proceeding. A motion to quash was filed upon the same grounds, and also upon the ground that the order was not issued by the clerk and that the petition shows upon its face that the court was without jurisdiction and that the proceeding and order based thereon was *coram non judice* and void.

A similar motion to quash the order and the proceeding was filed by the receiver, one of the grounds being that the court was without jurisdiction to determine the right of possession to the property described, the petition being based upon a statute in derogation of the common law, and that the equity court could not exercise any jurisdiction, if at all, until the statutory conditions precedent had been fulfilled, and that no proper summons had been issued by a person authorized by the statute to issue summons directed to the receiver; that it was obvious on the fact of the order that said proceeding for a summary determination of the right of possession was *coram non judice* and void.

The Chancellor, on December 17, 1931, overruled these motions to strike, and to quash, and ordered the receiver to file an answer to the petition on or before December 21, 1931. This is one of the two orders appealed from.

On December 21, 1931, complainant filed a motion and cross petition in which she renewed her previous motions and objections and alleged that she would be further prejudiced, should the court grant the petition for summary proceedings to dispossess the receiver, because she had advanced $8,000 to the receiver on the two receiver's certificates authorized by the court; that she had brought her

foreclosure proceeding for the purpose of protecting her lien under the mortgage sought to be foreclosed, so that petitioners could be paid such proper sums as might be due them and so that the property and complainant's rights therein could be protected by the court, as appeared from her bill; that she concurred in the petition taken by the receiver in his answer and motion to dismiss that day filed. Wherefore, she prayed that the petition of said ground owners be dismissed and the receiver be allowed to retain possession so that her rights under the mortgage and receiver's certificates might be preserved. She also alleged that said petition was obviously a petition of unlawful detainer, not cognizable in a court of equity; that it sought to have determined rights which could only be adjudicated in a plenary suit wherein all the parties interested can be properly brought before the court; that said petition failed to set forth any allegations which would entitle petitioners to the possession of the property now in the hands of the court.

The receiver's answer filed the same day, December 21, 1931, alleged *inter alia* that the fee title to the hotel building was owned by Arthur McKean, the holder of the outstanding ninety-nine-year lease from the Wynnes, which lease granted to the lessee, his heirs, personal representatives and assigns, the right to purchase said land on or before ten years from date on certain terms and conditions therein named; that said lease, and right to purchase, had never been cancelled or annulled, and that these rights of McKean were being sought to be foreclosed in this suit; that the petitioners had never been in possession of the property; that the building was constructed by the lessee and its present worth was $100,000 and that there was such an amalgam of equitable interests attached to said property, that the court should not in any summary proceeding deliver pos-

session to the petitioners. A similar allegation was made as to that portion of the leased premises owned by Fort Orange Company, and that portion of the building located thereon, except that no option to purchase was alleged as being contained in that lease. It was further alleged that the Babcocks, the original ground owners, had breached their said lease by failing to pay a $25,000 mortgage placed thereon; that E. F. Hiatt, Inc., purchased the ground from the Babcocks with knowledge of such breach, and with knowledge of delinquent taxes on the property; that E. F. Hiatt was president of E. F. Hiatt, Inc., and was also president of the Fort Orange Company, and that the latter company acquired the property with full knowledge of said default and delinquent taxes, and that E. F. Hiatt, Inc., had accepted a reduced rental, and that neither the Hiatt corporation nor its successor, the Fort Orange Company, had any right to enforce a foreclosure under the terms of the lease, such right having been waived; that neither of the ground owners had taken proper steps to divest the rights of the owners of the buildings and those holding equitable rights therein, and that the purpose of this summary proceeding was to get a court of equity in a summary manner to enforce a penalty provision, and thus enable the petitioner to gain the buildings located on the leased property, owned by other parties, costing approximately $200,000 to erect, and also to gain the benefit of the tourist season just beginning, during which season the income from the hotel would amount to between $30,000 and $40,000, which would be sufficient to enable the receiver to pay such sums as would properly be due for ground rents, and such taxes as would demand payment, and to reimburse the holder of the receiver's certificates which had been issued for necessary repairs to the building, which repairs the petitioners knew of and had stood by without objection, and allowed the receiver to

make that said Hiatt had led the receiver to believe he would waive his rents in order to get said repairs made, and that they were made out of the proceeds of the $8,000 of receiver's certificates on the faith of which the complainant, Grace P. Johnson, had advanced to the receiver said sum of $8,000. That during the summer months it had hardly been possible to take in sufficient funds to pay operating expenses, the business of the hotel being largely winter tourist business; that numerous guests had made reservations for the winter season, and that to disrupt the receiver's management and possession would be disastrous to the interest of the mortgage and render the expenses incurred during the lean summer months null and void, and enable the petitioners to reap the benefits of the receivership, although they knew of the conditions and had sat idly by until the winter season was at hand, when they resorted to this summary proceeding; wherefore, they were estopped from seeking to dispossess the receiver. That if the receivership should be allowed to go on to conclusion, there should be realized from the sale of the building and the modified ground leases sufficient to pay the mortgagee and possibly the owners of the building and leases substantial dividends. That prior to the receivership the petitioners had modified the leases by agreeing to accept less sums as rentals than those originally provided for in said leases, and had actually accepted such less sums, after notice of the default in taxes, thereby waiving their rights of forfeiture.

The receiver's said answer also alleged that the said petitioning ground owners had already elected their remedy in that they had each filed suits on the chancery side of the court, seeking cancellation of the leases and forfeiture of the leasehold estates and making the lessees and complainant herein parties, which suits were still pending and undisposed of. It was alleged that there was no immediate

danger of the enforcement of the tax liens against the property. There was incorporated in said answer a motion to dismiss the petition for summary proceedings. The answer was sworn to by the receiver.

On December 30, 1931, the court made an order, which was entered on January 2, 1932, after the taking of testimony, granting the petition of Lula B. Wynne and husband, and the Fort Orange Company, "to the extent that the receiver heretofore appointed in this cause be and he is hereby directed to surrender and vacate the Fort Gatlin Hotel premises and the real property, described in the petition within seven days from this date." The order required the receiver, within such time, to make a complete and detailed report of his receipts and disbursements and an inventory of the property. The order stated that, "The court does not herein pass upon the right of any particular party to succeed the receiver in possession."

It was further ordered that "If Grace P. Johnson, complainant herein, shall within seven days from this date file in this cause a bond in the amount of $25,000 payable to Lula B. Wynne and Fort Orange Company, jointly and severally, conditioned that on or before six months from this date she will pay to the petitioners jointly and severally all rents accrued to them jointly and severally under their several leases as of the date she makes such payment, and will within six months from this date pay all unpaid taxes delinquent at the time of such payment and will within such six months produce to the petitioners tax receipts showing the payment of such taxes, such bond to be approved by the court, * * * then the receiver will not at this time be required to vacate the receivership premises, but the receiver may continue in possession of said premises until the further order of this court, and during such possession the receiver shall apply all the net earnings of the property,

first to the payment of the defaulted or accruing ground rent and next to the defaulted and accruing taxes in order that the obligation of Grace P. Johnson on said bond may be thereby reduced."

It was further ordered that the motion and cross petition of Grace P. Johnson, hereinabove referred to, filed December 21, 1921, be denied. The order fixed the amount of supersedeas bond in case of appeal at $25,000, and certain terms and conditions, somewhat similar to those stated in the preceding paragraph.

The above is the second of the two orders here appealed from. The appeal appears to have been taken without supersedeas, no bond being shown by the record.

It was after the orders appealed from were made that defendants Arthur McKean and Hugh Ferguson, on, to-wit, January 20, 1932, filed an unsworn answer to complainant's bill, and the complainant later filed a motion to strike such answer. No action of the court appears to have been taken thereon, nor testimony taken in support thereof, and the only questions presented by the appeal relate to the propriety of the Chancellor's two orders, made before such answer was filed, which orders pertained to the motion and petition of the ground owners with reference to the surrender to them by the receiver of the possession of the property involved. Therefore, we are not called upon to consider said answer to the bill, which alleged among other things that the Fort Gatlin Hotel Company was owned and controlled by the complainant or the motion to dismiss the same. Nor, on the other hand, are we called upon to consider certain other matters presented by appellant's answer to the motion of the ground owners to dismiss the appeal in this case, alleging therein certain facts tending to show that the ground owners had colluded with McKean, the owner of the leasehold, to defeat the interests of Mrs. John-

son, the mortgagee; such as the execution of an agreement for a new lease by the Wynnes and Fort Orange Company to McKean almost immediately after the Chancellor had made his order dispossessing the receiver, and the action of McKean and his father-in-law, Hugh Ferguson, in allowing *decrees pro confesso* and final decrees to be taken against them in suits brought by the ground owners, seeking a forfeiture of said leases, to which suits Mrs. Johnson had originally been made a party defendant along with McKean and Ferguson, but dismissed as a party just prior to the taking of the decrees *pro confesso* against McKean and Ferguson.

This case has already been considered by this Court on motions made by the ground owners to dismiss the appeal. The motions were denied on October 27, 1932. See Johnson, *et al., v.* Metzinger, *et al.,* 144 So. 204. Another motion to dismiss and to quash was filed by the same parties, and the motions having been fully and ably argued and briefed by counsel for both sides, they have asked that the appeal be considered and determined on its merits, in connection with the consideration of the motions.

The first question for us to consider is one of procedure, that is, whether or not the court erred in determining the question of whether or not the receiver should be dispossessed of the property involved in the chancery suit by a summary proceeding, closely analogous to an unlawful detainer action at law (see Sections 5309-5325 C. G. L. of 1927) brought in this chancery suit, by parties who were not parties to the suit, for the express purpose of determining the right of possession as between themselves and the receiver.

Appellants contend that the court below erred in entertaining such proceeding, and cite Cavedo v. Billings, 16 Fla. 261, wherein this Court held that a suit to recover possession

of lands under a legal title, and for *mesne* profits, could not be maintained in equity that all of these issues could be determined and tried in a court of law.

Appellants also cite the recent case of McNeill v. Lyons, 105 Fla. 243, 140 So. 921, which, in principle, is a case closely in point. We there held that an order made in an equity suit directing a receiver to deliver possession of lands to the holder of a tax deed, who was not a party to the suit, and over whose rights, as between himself and parties to the suit, the court had acquired no jurisdiction, was improper. Counsel for appellees contends that the cited case fails to support the argument of appellants, because in the case at bar the court did not direct the receiver to deliver possession to the petitioning ground owners, but merely ordered the receiver "to surrender and vacate" the hotel premises and real property described in the petition, specifically refraining from passing upon the right of any particular party to succeed the receiver in possession. But the court did grant the petition to the extent of dispossessing the receiver, whom the court had placed in possession of the property for the purposes prayed for in complainant's bill, and the failure to find and determine that anyone else was entitled to possession made the order all the more erroneous under the circumstances. The rule is well settled that the moving party seeking to gain possession of property must recover on the strength of his own right of possession and not on the weakness of that of his adversary. So the court's order indicates that the movants or petitioners had not by their evidence shown the right to be put in possession of the property.

It will have been noted that the petition for possession in this case was very meager in its averments, stating legal conclusions (which might have been appropriate in an action at law for unlawful detainer) rather than making al-

legations of facts, as is appropriate in establishing a right to relief in equity. McClinton v. Chapin, 54 Fla. 510, 45 So. 33, and cases cited.

Appellees contend that the proceeding was proper, first because the receiver's possession is the possession of the court and that the appellants cannot complain if the court is denied the right of trial by jury. But while the receiver's possession is that of the court, the receiver holds by order of the court for the benefit of all parties to the receivership suit as their interests may be determined (So. Colonization Co. v. Parten, 83 Fla. 300, 91 So. 263, and 23 R. C. L. 54) and this petition was in the nature of an action against the receiver, with the court's consent, not a suit against the court. As this action vitally affected the rights of the complainant, at whose instance and for whose special protection the receiver was appointed and placed by the court in possession of this property, she should have been properly impleaded, either in a plenary suit, or at least upon a dependent bill, filed with the court's permission in the pending suit. For obviously the right of the ground owners to contest the receiver's right of possession depended upon whether they were entitled to a forfeiture of the leases and leasehold estates covered by the mortgage complainant was seeking to foreclose, which leases had not been forfeited at the time the bill was filed, and the court, through its receiver, had taken possession of the property and authorized its repair and improvement with funds advanced by complainant upon the faith of the receivership certificates issued under the court's authority.

We recognize the general rule, contended for by the appealing ground owners, that the appointing court has, during the continuance of its possession and control, as incident thereto, and as ancillary to the suit in which the possession was acquired, to hear and determine all questions

concerning the title, possession and control of the property, in some appropriate subordinate suit or proceeding. See Wabash R. Co. v. Adelbert College, 208 U. S. 38, 54 Law Ed. 379, 386, and 53 C. J. 330-341. But this rule is subject to some qualifications in this jurisdiction by the decision of this Court in McNeill v. Lyons, *supra*. Appellees also cite Clark on Receivers, 2nd E., pp. 749-750, which indicates that a dependent bill would have been proper, and wherein it is said that, "The *res* acquired under the original bill gives ancillary jurisdiction to entertain the intervention or the dependent bill seeking relief respecting the *res*," and that "Parties to the original bill are not thereby made parties to the dependent bill." Not necessarily so, of course, but we are of the opinion that where one not a party to the suit is allowed to intervene, and by petition, or as complainant in a dependent bill, attacks property or property rights in which the complainant in the main bill has by her bill claimed an interest and sought the aid of the court to protect and enforce the same, such complainant in the main bill should be accorded due and proper notice and opportunity, by appropriate pleadings and procedure, in which the issues are definitely made up between the parties, to defend her interests as against such adverse claim, so that the rights and equities of all the interested parties may be ascertained and protected by methods appropriate to a court of equity.

Many questions are raised by the appellee ground owners as to complainant's right to bring this suit for foreclosure and receivership. As they were not made parties, complainant or defendant in the suit below, they cannot raise such questions. They must rely on the strength of their own claim that they were entitled to immediate possession of the premises by reason of the forfeiture of the leasehold estates in accordance with the terms of the leases. For in-

stance, they claim that the complainant was not the assignee and *purchaser* of the mortgage note, but that she paid it. If they had the right to raise this question we do not think the evidence on the hearing sustains their position. Nor did the evidence show that Mrs. Johnson was the owner and controller, through other parties, of the Fort Gatlin Company. This contention is apparently based on the allegations of the unsworn answer of Ferguson and McKean to complainant's bill, filed after the orders appealed from were made. The motion to strike such answer may have admitted the allegations thereof for the purposes of the motion, and if this case were here on an appeal from an order made on the motion to strike, then such a contention might be justified; but such is not the case.

Aside from the question of procedure, above discussed, there was evidence tending to show that the petitioning ground owners had waived their right to forfeit the leases and leasehold estates, at the time they attempted to do so, and it was possibly for this reason, which was probably well founded (see generally, 16 R. C. L. 1130, *et seq.*) that the court did not order the receiver to deliver possession to them. It also appeared that the complainant had not been given the thirty days' notice required by the leases, as a condition precedent to forfeiture, though an attempt to do so by mail had been made. But appellees contend that notice to her was not necessary, as she was not a "mortgagee," but merely, at most, the assignee of one of the mortgage notes. However, the assignment to her of one of the mortgage notes carried with it the right to foreclose the mortgage, and made her to all intents and purposes a mortgagee, and under the circumstances of this case, she should have been notified.

We might add that the court's action in dispossessing the receiver, although he did not award possession to the pe-

titioners, was probably due to the evidence tending to show that the receiver had been operating the hotel at a considerable loss, and that it was futile to continue the receivership. The receiver was of the opinion that the hotel would show a considerable profit during the winter season. As the complainant had advanced $8,000 to the receiver, under the court's authority, during the lean summer months, for repairs and operating fund, it would seem that if there were any doubts about this question they should have been resolved in complainant's favor. If the property could have been made to pay the ground rents and taxes, thus preserving the leasehold estates intact, and possibly something in addition to reimburse the complainant for her advances to the receiver, it would probably have been to the best interests of all parties concerned to have left the receiver in possession until foreclosure sale. But even the allegations of complainant's bill and the affidavit offered by her when a receiver was applied for, indicated a rather desperate chance that the property could be operated at a sufficient income to pay the ground rents, taxes and insurance premiums, and we are not prepared at this time to say that the evidence in the hearing before the Chancellor justified any great amount of optimism to the contrary. But this appears to have been Mrs. Johnson's only chance to save herself from severe loss, and if the hotel had shown a profit during the winter of 1931-32, and the ground owners had been paid their rentals, they would not have had cause to complain, and no one would have been hurt.

Other questions contended for in argument, which are not discussed in this already too extended opinion, have been considered, but are either not essential to a decision, or are, in our opinion not well founded.

Our conclusion is that the motions to dismiss and quash should be denied and that the orders appealed from were

erroneous and must be reversed, and the cause remanded for further proceedings not inconsistent with this opinion.

Reversed and remanded.

DAVIS, C. J., and WHITFIELD, ELLIS, TERRELL and BUFORD, J. J., concur.