**In re BOOGAART OF FLORIDA, INC., et al., Debtors.**

**Bankruptcy No. 81–00452–BKC–SMW.**

United States Bankruptcy Court, S. D. Florida.

Oct. 27, 1981.

Mark R. Hauck, C. Peter Buhler, Miami, Fla., for Associated Grocers.

Stephen Judson, Miami, Fla., for Garrido.

Timothy Norris, Miami, Fla., for Boogaart.

John Kozyak, Miami, Fla., for Pinebreeze Farms.

Samuel A. Brodnax, Jr., Miami, Fla., for Malone & Hyde.

Alfred Aronovitz, Miami, Fla., for Palmetto By-Pass Associates.

William J. Piquette, Miami Springs, Fla., for Real Holding Management Corp.

John P. Horan, Miami, Fla., for Chase Commercial Corp.

Steven H. Friedman, Miami, Fla., for Hobart Corp.

A. Rodger Traynor, Jr., Miami, Fla., for Humpenbeck.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

SIDNEY M. WEAVER, Bankruptcy Judge.

THIS CAUSE came to be heard upon the six Motions for Orders Authorizing and Approving Assumption and Assignment of Leases and Sale of Property Free and Clear of Liens filed by the Debtors in Possession, upon the Petition to Invalidate Sale and/or to Preclude Assignment of Sublease filed by Associated Grocers of Florida, Inc., and upon the objections of Palmetto By-Pass Associates, Humpenbeck, Inc., and Pinebreeze Farms, Inc., and was heard by the Court on October 15, 1981. The Court, having heard the testimony and examined the evidence presented, having observed the candor and demeanor of the witnesses, having considered the arguments of counsel, and being otherwise fully advised in the premises, does hereby make the following findings of fact and conclusions of law:

On March 30, 1981, Boogaart of Florida, Inc., ("Boogaart-Florida") and each of its eleven subsidiary corporations filed voluntary Chapter 11 petitions for reorganization. Thereafter, an Order was entered by the Court authorizing the joint administration of the estates pursuant to Bankruptcy Rule 117(b). Motions were presented by Boogaart-Florida and six of its subsidiaries seeking the Court's authorization and approval of the assumption and assignment of certain unexpired real property and equipment leases pursuant to 11 U.S.C. §§ 363 and 365 and approving and confirming the sale of certain personal property free and

clear of all claims, liens, security interests and encumbrances pursuant to 11 U.S.C. § 363. This Court has jurisdiction over these motions pursuant to 28 U.S.C. § 1471.

Subsequent to the filing of their Chapter 11 petitions, Boogaart-Florida and its following affiliates (collectively the "Debtors") continued to operate as Debtors in Possession:

Boogaart of Florida, 124th Street, Inc. ("Boogaart-124th Street"), Boogaart of Florida, 167th Street, Inc. ("Boogaart-167th Street"), Boogaart of Florida, Ft. Pierce, Inc., ("Boogaart-Ft. Pierce"), Boogaart of Florida, Hialeah, Inc., ("Boogaart-Hialeah"), Boogaart of Florida, Homestead, Inc., ("Boogaart-Homestead"), and Boogaart of Florida, South Hialeah, Inc., ("Boogaart-South Hialeah").

Each of these affiliates had entered into written lease or sublease agreements for the lease of real property upon which its retail grocery business could operate. In addition, Boogaart-Florida had entered into written lease agreements and security agreements for the lease and purchase of equipment and other personal property to be utilized by the Debtors in their business operations.

Because of the Debtors' continuing operating losses and in order to maximize the dividends which will eventually be distributed to creditors, the Debtors' management decided to liquidate most of the Debtors' assets. Specifically, it was decided that the real property and equipment leases for the six operating affiliates would be assumed and assigned to third parties pursuant to 11 U.S.C. §§ 363 and 365, and the equipment, furniture, furnishings and fixtures, and merchandise inventory located at each of the six outlets would be sold free and clear of all claims and liens pursuant to 11 U.S.C. § 363(b), with all valid claims and liens attaching to the proceeds of the sale. The proceeds remaining after curing all defaults in the leases and after satisfying all purchase money security interests would be deposited in an interest-bearing account pursuant to 11 U.S.C. § 345 pending the confirmation of a plan or plans of reorganization.

In order to effectuate the liquidation, the Debtors held an auction on October 7, 1981. The terms of sale for the auction specified that all sales of the leasehold interests and sales of the personal property were subject to the Court's approval and that, pursuant to 11 U.S.C. § 363(k), secured creditors were authorized to bid in their claims secured by the assets being sold.

On October 15, 1981, the Court held a hearing on the Debtors' motions for approval of the sales and assignments to the successful bidders. Various objections by creditors or landlords were advanced, several of which apply to the disposition of the assets at more than one store. For clarity, the Court will address these common objections at the outset.

Counsel for Pinebreeze Farms, Inc. ("Pinebreeze"), a general unsecured creditor of the estates, and counsel for Associated Grocers of Florida, Inc. ("AG"), the sublessor of the Hialeah and Ft. Pierce real property subleases, objected to all six motions on the ground that liquidation prior to the Court's approval of a disclosure statement and the confirmation of a plan of reorganization is improper.

■ The Court disagrees. Section 363(b) of the Bankruptcy Code provides that a court may approve the sale of the property of the estate other than in the ordinary course of business. This provision authorizes the sale of most of a debtor's assets prior to the proposal and confirmation of a plan of reorganization. *See, e.g., In re WHET, Inc.,* 12 B.R. 743 (Bkrtcy.D.Mass. 1981); *In re WFDR, Inc.,* 10 B.R. 109, 7 B.C.D. 514 (Bkrtcy.N.D.Ga.1981); *In re Alves Photo Service, Inc.,* 6 B.R. 690 (Bkrtcy.D.Mass.1980).

■ Pinebreeze's objection apparently is based upon *In re D. M. Christian Co.,* 7 B.R. 561 (Bkrtcy.N.D.W.Va.1980), which held that a disclosure statement must be approved by the court and submitted to creditors before the court would allow the complete liquidation of the debtor's tangible assets. The court failed to consider 11 U.S.C. § 363(b), which expressly permits sales outside of the ordinary course of business after creditors are given an opportunity to be heard. The *Christian* decision apparently has not been followed by any other court. *See In re WHET,* 12 B.R. 743, 750–751 (D.Mass.1981). Moreover, these Debtors are facing problems with which the *Christian* decision did not deal. Where, as here, the value of the assets is rapidly decreasing and the estates are suffering con-

484

tinuing losses, liquidation of assets prior to the proposal and confirmation of plans of reorganization may be desirable because it will ultimately increase the amounts distributed to creditors after plans are confirmed. Accordingly, § 363(b) provides for a method whereby such liquidation can occur under court supervision. The Court finds that liquidation of these assets prior to confirmation of plans, with the net proceeds to be deposited in an interest-bearing account and to be distributed pursuant to the plans, is appropriate in this instance.

AG and Pinebreeze's second common objection relates to whether a secured creditor properly bid in its claim secured by the property being sold under § 363(k).

The successful bidder for the real property leases, the equipment leases and the personal property located at both the Hialeah and Homestead outlets was Malone & Hyde, Inc. ("Malone & Hyde"). Pursuant to 11 U.S.C. § 363(k) and the auction's "terms of sale", Malone & Hyde bid in the amount of its debt secured by the property being sold. While AG was present at the auction, it did not object to Malone & Hyde's bid at that time.

At the hearing, AG and Pinebreeze objected to the assumption and assignment of both the Hialeah real property sublease and the Homestead real property lease on the ground that Malone & Hyde's bids of its claims secured by the leaseholds were invalid because Malone & Hyde did not have perfected security interests in the leaseholds. AG also argued that should the Court find Malone & Hyde's bid to be invalid, the unsuccessful bidder, Real Holding Management Corporation, should be declared the successful bidder. Malone & Hyde and the Debtors responded that Malone & Hyde's security interests in all of the Debtors' "contract rights" attaches to the Debtors' interests in the real property leaseholds and thus that Malone & Hyde properly could bid in its security interests toward the purchase of the leaseholds as well as for the inventory and equipment.

The Court finds that, pursuant to an assignment from Sun Bank of Miami, Malone & Hyde holds duly perfected security interests securing an obligation totalling $892,-304.08 in the following property of each of the Debtors:

All inventories, supplies, merchandise, machinery, furniture, fixtures and equipment now owned or hereafter acquired by debtor and all present and future accounts receivable and *contract rights* owned or hereafter owned by debtor or to which debtor has an interest. (Emphasis added.) *

As a result of two subsequent transactions, Malone & Hyde also holds duly perfected security interests securing obligations totalling $496,087.24 and $950,396.87 in all inventory, equipment, furnishings, machinery and furniture of the Debtors.

Under Florida law, a security interest in a debtor's "contract rights" attaches to its interest as a lessee in a leasehold. *Gould, Inc. v. Hydro-Ski International Corp.*, 287 So.2d 115 (Fla. 4th DCA 1974). In *Gould*, the court stated:

Appellant contends that a leasehold interest is personal property, *Thalheimer v. Tischler*, 55 Fla. 796, 46 So. 514 (1908); that a lessee may mortgage his leasehold interest, *Johnson v. Metzinger*, 116 Fla. 262, 156 So. 681 (1934); *Oliver v. Mercaldi*, Fla.App. 1958, 103 So.2d 665, regardless of the prohibition contained therein against assignment without the lessor's approval, *Great Southern Aircraft Corporation v. Kraus*, Fla.App. 1961, 132 So.2d 608; and that the security agreement encumbers the leasehold. We agree. The provision of the security agreement is all inclusive and unequivocal. It granted to appellant as collateral security "all of its contract rights". Unquestionably, the lease in question is one of appellee's contract rights. 287 So.2d at 116.

Pinebreeze and AG argue in effect that *Gould* is erroneous, that is, that the Uniform Commercial Code excludes trans-

* This transaction is not affected by the 1979 revisions to the Florida Uniform Commercial Code, which deleted "contract right" from Article 9. § 680.101, *Florida Statutes* (1979).

actions which create a security interest in a leasehold, and cite in support § 679.104(j), *Florida Statutes* (1979) and *In re Bristol Associates, Inc.,* 505 F.2d 1056 (3d Cir. 1974). While the Court appreciates that position, the Court cannot ignore a decision of a Florida appellate court which is squarely on point. The issue is one of Florida law, and this Court must apply Florida law as it is expressed by the courts of Florida. 28 U.S.C. § 1652, 1A *Moore's Federal Practice* ¶ 0.307 (2d ed. rev. 1981). The *Gould* case was not reversed and has not been overruled either judicially or legislatively, although the Florida Legislature had ample opportunity to do so in 1979 when it substantially revised Florida's version of the Uniform Commercial Code. *See* c. 79–398, Laws of Florida.

Furthermore, the *Gould* decision does recognize that a leasehold interest in real property is personal property. *See, e.g., Thalheimer v. Tischler,* 55 Fla. 796, 46 So. 514 (1908). And § 679.102(1)(a), *Florida Statutes* (1979) clearly states that the Florida Uniform Commercial Code applies to all transactions intended to create security interests in personal property. Thus, this Court cannot say that *Gould* is an aberration which does not reflect accurately the state of the law of Florida.

AG makes the further argument that the anti-assignment provisions in its sublease to Boogaart-Hialeah prevented the creation of a security interest in the leasehold. *Gould,* however, stands for the contrary proposition. *See also Great Southern Aircraft Corp. v. Kraus,* 132 So.2d 608, 609–610 (Fla.3d DCA 1961).

Thus, Malone & Hyde possesses security interests in the Debtors' real property and equipment leaseholds securing the sum of $892,304.08. The sum of the § 363(k) bids advanced by Malone & Hyde for the purchase of the real property leaseholds, the equipment leases and for the purchase free and clear of liens of personal property totalled $963,000.00 for the Hialeah and Homestead stores. Although the portions of the bids allocable to the real property leases, the equipment leases and the person-

al property were not specifically separated, it is clear, and this Court so finds, that Malone & Hyde's allowed secured claims are sufficient to permit Malone & Hyde to purchase by bidding in pursuant to 11 U.S.C. § 363(k) the leasehold interests, inventory, and equipment of the Hialeah and Homestead stores.

AG advances another objection to the assignment and sale of the assets at both the Hialeah and Ft. Pierce outlets. Specifically, AG argues that the provisions of the Hialeah and Ft. Pierce prime lease and sublease agreements require that a sublessee be a member of AG. Malone & Hyde, the successful bidder for the Hialeah assets, assigned its bid to Tropical Supermarket, Inc., and the successful bidder for the Ft. Pierce assets is Great Econo Warehouse Foods, Inc. Neither is a member of AG.

The Court cannot agree with AG's contentions. First, neither the subleases nor the prime leases of the Hialeah and Ft. Pierce premises require that the sublessee be a member of or otherwise affiliated with AG. Second, while it is true that the Hialeah sublease contains additional provisions requiring the sublessee to utilize various consultive, advisory and accounting services from AG, the uncontested evidence indicates that the enforcement of the provisions has been waived by AG's failure ever to require Boogaart-Hialeah to utilize those services.

A lessor's failure to enforce the provisions of a lease prevents the lessor from subsequently enforcing those provisions. Thus, a waived lease provision is for all intents and purposes stricken from the lease. 17A *C.J.S.* "Contracts" § 493. For example, if a lessor consents to an assignment of the lease, it forever waives its right to enforce an anti-assignment provision to prevent a subsequent assignment. 49 *Am.Jur.2d* "Landlord and Tenant" § 422. Correspondingly, a lessor's failure to enforce provisions against the original lessee operates as a waiver of enforcement against a sublessee. *See Ten-Six Olive, Inc. v. Curby,* 208 F.2d 117 (8th Cir. 1953).

Malone & Hyde and the Debtors also argue that giving effect to the waived provisions contained in the Hialeah sublease would support an activity that is contrary to the public policies embodied in the antitrust laws of the United States. They contend that these provisions represent an attempt by AG to tie the sale of prime lease space to the purchase of AG's consulting services. *See, e.g., Northern Pacific Railway Co. v. United States*, 356 U.S. 1, 78 S.Ct. 356, 2 L.Ed.2d 545 (1958); *Bogosian v. Gulf Oil Corp.*, 561 F.2d 434 (3d Cir. 1977); *Bazal v. Belford Trucking Co.*, 442 F.Supp. 1089 (S.D.Fla.1977). The Court is not convinced that the Hialeah sublease and servicing agreement constitutes a tying arrangement in violation of the Clayton or Sherman Acts. However, the spector of a possible violation of the antitrust laws militates against the Court's giving effect to the provisions.

In any event, "[p]rovisions restricting the power of the lessee to transfer his term are traditionally construed very strictly and in favor of alienation to the greatest extent possible." *Great Southern Aircraft Corp. v. Kraus*, 132 So.2d 608, 609 (Fla. 3d DCA 1961). Furthermore, developments in Florida law indicate that restrictions upon transfer of commercial leaseholds are enforceable only if commercially reasonable and are not enforceable if they are for the landlord's convenience or to permit a landlord to collect more rent than was contracted for. *See Fernandez v. Vazquez*, 397 So.2d 1171 (Fla. 3d DCA 1981). AG's real purpose in objecting to the sale of the Ft. Pierce and Hialeah stores to the successful bidders is to have in those stores members of AG who will purchase groceries wholesale from AG, thus providing greater profits to AG. This apparently is an impermissible reason under Florida law to prevent the assignment of a leasehold interest, and it is not a reason recognized under 11 U.S.C. § 365 to prohibit the assignment. Accordingly, the Court concludes that the leasehold interests at the Hialeah and Ft. Pierce stores are assignable by Boogaart-Hialeah and Boogaart-Ft. Pierce to corporations which are not members of AG.

The Court will at this point address the objections limited to the motion to approve a particular sale.

1. *Boogaart-Homestead Outlet*

■ Boogaart-Florida and Boogaart-Homestead seek to assign the real property lease, the equipment lease and the personal property located at the Homestead outlet to Spencer's Market, Inc., a corporation recently organized by the manager of the Homestead store. Spencer's Market is the assignee of Malone & Hyde's successful bid in the amount of $421,000.00 plus an additional sum for the inventory in the store.

The real property lessor, Humpenbeck, Inc., argued that the language of the lease precludes assignment without the consent of the lessor. However, 11 U.S.C. § 365(f) provides for the assignment of an unexpired lease notwithstanding a provision prohibiting, restricting or conditioning assignment. Humpenbeck contends that 11 U.S.C. § 365(c) provides an exception to § 365(f) and prevents the assignment in this instance. Section 365(c)(1)(A) and (B) excuses a party from accepting performance from as assignee of an executory contract if "applicable law excuses a party" and that party does not consent. It is argued that since applicable Florida law allows a lessor to withhold its consent to an assignment or sublease to a financially unsound assignee, Humpenbeck can effectively prevent assignment to Spencer's Market.

However, § 365(c)'s exception to § 365(f) applies only to personal service contracts or contracts based upon personal trust or confidence. 2 *Collier on Bankruptcy*, § 365.05 at 365–34 (15 ed. rev. 1981); *In re Taylor Manufacturing Co., Inc.*, 6 B.R. 370 (Bkrtcy. N.D.Ga.1980). A lease of real property is not a contract for personal services within the contemplation of § 365(c). Accordingly, the Court finds that the lease is assignable under § 365(f).

■ According to the uncontradicted testimony of Norman Spencer, the president of Spencer's Market and the manager of the Homestead store for a number of years, the

sales at the Homestead store will exceed $5 million for the next year, which will generate a sufficient income flow to pay Humpenbeck and the equipment lessor as well as service the debt being incurred by Spencer's Market in acquiring the store. The Court is satisfied that Spencer's Market will generate the necessary income to satisfy its obligations to Humpenbeck and Firstmark Leasing Corp., the equipment lessor. *See In re Lafayette Radio Electronics Corp.*, 12 B.R. 302, 310 (Bkrtcy.E.D.N.Y.1981). Thus, the lessors are afforded adequate assurance of future performance by Spencer's Market in accordance with 11 U.S.C. §§ 365(b) and (f). In addition, the lessors will be compensated in full for all existing defaults under the leases pursuant to § 365.

Therefore, the Court will authorize and approve the assumption and assignment of the real property lease and the equipment lease to Spencer's Market. The Court also will approve and confirm the sale of the Debtors' right, title and interest in the personal property located at the Homestead store to Spencer's Market free and clear of any claims, security interests, liens and encumbrances pursuant to 11 U.S.C. § 363(b), with such claims and liens attaching to the proceeds of the sale.

### 2. *Boogaart-Hialeah Outlet*

Boogaart-Florida and Boogaart-Hialeah seek to assign the real property sublease, the equipment leases and the personal property located at the Hialeah outlet to Tropical Supermarket, Inc. Tropical Supermarket is the assignee of the bid of Malone & Hyde, which successfully bid $542,000.00 plus an additional sum for the inventory.

AG, the sublessor of the real property, has acknowledged that Tropical Supermarket is financially able to fulfill its obligations under the sublease, and no equipment lessor raised any objections. The uncontested evidence presented at the hearing satisfies the Court that Tropical Supermarket is financially sound and that it will operate a supermarket on the premises in accordance with the sublease. The Court

finds that AG and the equipment lessors are afforded adequate assurance of future performance by Tropical Supermarket in accordance with 11 U.S.C. § 365(b) and (f). The lessors also will be compensated in full for all existing defaults under the leases pursuant to § 365.

Chase Commercial Corporation, one of the equipment lessors, argued that it had insufficient notice of the Debtors' motions to determine whether it has an objection. The Court will approve the assumption and assignment subject to Chase Commercial's right to object.

Therefore, the Court will authorize and approve, subject to Chase Commercial's right to object, the assumption and assignment of the real property sublease and the equipment leases to Tropical Supermarket. The Court also will approve and confirm the sale of the Debtors' right, title and interest in the personal property located at the Hialeah store to Tropical Supermarket free and clear of any claims, security interests, liens and encumbrances pursuant to 11 U.S.C. § 363(b), with such claims and liens attaching to the proceeds of the sale.

### 3. *Boogaart-Ft. Pierce Outlet*

Boogaart-Florida and Boogaart-Ft. Pierce seek to assign the real property sublease, the equipment lease and the personal property located at the Ft. Pierce outlet to Great Econo Warehouse Foods, Inc., ("Great Econo") which successfully bid $40,000.00, plus an additional sum for the inventory. Great Econo is a new corporation organized by the manager of the Boogaart-Ft. Pierce outlet and an executive employee of Boogaart-Florida. From the uncontested evidence presented by John Saunders, the manager of the Ft. Pierce store and one of the principals of Great Econo, the Court finds that the income stream generated by average sales of $80,000 per week will be sufficient to pay AG and the equipment lessor as well as service the debt and that Great Econo will operate a supermarket on the premises. The Court finds that AG, the real property sublessor, and AVCO Financial Services Leasing Company, the equip-

ment lessor, are afforded adequate assurance of future performance by Great Econo, in accordance with 11 U.S.C. § 365(b) and (f). The lessors also will be compensated in full for all existing defaults in the leases pursuant to § 365. Therefore, the Court will authorize and approve the assumption and assignment of the real property lease and the equipment lease to Great Econo. The Court also will approve and confirm the sale of the Debtors' right, title and interest in the personal property located at the Ft. Pierce store to Great Econo free and clear of any claims, security, interest, liens and encumbrances pursuant to 11 U.S.C. § 363(b), with such claims and liens attaching to the proceeds of the sale.

#### 4. *Boogaart-167th Street Outlet*

■ Boogaart-Florida and Boogaart-167th Street seek to assign the real property lease, the equipment lease and the personal property located at the 167th Street store to a corporation being formed by Jose Antonio Garrido and/or Jose Antonio Garrido, Jr., who successfully bid $131,000.00 plus an additional sum for the inventory. The Garridos intend to form a corporation to conduct a retail grocery business on the premises.

The real property lessor objected to the assignment, arguing that it had insufficient financial information about the Garridos and that the Garridos would not operate the outlet 24 hours per day. The equipment lessor, Firstmark Leasing Corp., made no objection.

The Court finds that the Garridos possess sufficient expertise and experience to manage the corporation which will acquire the Boogaart-167th Street store. The income generated by the store and the capitalization of the new corporation will be sufficient to meet debt service as well as pay the lessors. Furthermore, the Court finds that there is no requirement in the lease that the store be open 24 hours per day, and the Garridos' refusal to agree to have the store open 24 hours per day (unless it turns out to be profitable to do so) does not violate the lease. Accordingly, the Court finds that

the lessors are accorded adequate assurance of future performance in accordance with 11 U.S.C. § 365(b) and (f). In addition, the lessors will be compensated in full for all existing defaults pursuant to § 365.

Therefore, the Court will authorize and approve the assumption and assignment of the real property lease and the equipment lease to the corporation to be formed by the Garridos. The Court also will approve and confirm the sale of the Debtors' right, title and interest in the personal property located at the 167th Street store to the corporation to be formed by the Garridos free and clear of any claims, security interests, liens and encumbrances pursuant to 11 U.S.C. § 363(b), with such claims and liens attaching to the proceeds of the sale.

#### 5. *Boogaart-124th Street Outlet*

■ Boogaart-Florida and Boogaart-124th Street seek to assign the real property lease, the equipment leases and the personal property located at the 124th Street store to another corporation to be formed by the Garridos, who successfully bid $317,000.00 plus an additional sum for the inventory. The Garridos intend to form a corporation to conduct a retail grocery business on the premises.

The only objection to the assumption and assignment was made by Chase Commercial Corporation, one of the equipment lessors. Chase Commercial argued that because of insufficient notice of the Debtors' motions, it is presently unable to determine whether it has a valid objection. The Court will approve the assumption and assignment subject to Chase Commercial's later right to interpose an objection.

The Court finds that the real property lessors and the equipment lessors, Firstmark Leasing Corp. and V.M.S. Leasing, Inc., are afforded adequate assurance of future performance by the corporation to be formed by the Garridos pursuant to 11 U.S.C. § 365(b) and (f). The lessors will be compensated in full for all existing defaults in the leases pursuant to § 365.

Therefore, the Court will authorize and approve, subject to Chase Commercial's right to object, the assumption and assignment of the real property lease and the equipment leases to the corporation to be formed by the Garridos. The Court also will approve and confirm the sale of the Debtors' right, title, and interest in the personal property located at the 124th Street outlet to the corporation to be formed by the Garridos free and clear of any claims, security interests, liens and encumbrances pursuant to 11 U.S.C. § 363(b), with such claims and liens attaching to the proceeds of the sale.

### 6. *Boogaart-South Hialeah Outlet*

Boogaart-Florida and Boogaart-South Hialeah seek to assign the real property sublease, the equipment lease and the personal property located at the South Hialeah store to a third corporation to be formed by the Garridos, who successfully bid $362,000.00 plus an additional sum for the inventory. The Garridos intend to form a corporation to conduct a retail grocery business on the premises. No objections were made to the motion for approval.

The Court finds the sublessor of the real property lease, the Grand Union Company, and the equipment lessors, Firstmark Leasing Corp. and V.M.S. Leasing, Inc., are afforded adequate assurance of future performance by the corporation to be formed by the Garridos in accordance with 11 U.S.C. § 365(b) and (f). The lessors will be compensated in full for all existing defaults in the leases pursuant to § 365. Therefore, the Court will authorize and approve the assumption and assignment of the real property lease and the equipment leases to the corporation to be formed by the Garridos. The Court also will approve and confirm the sale of the Debtors' right, title and interest in the personal property located at the South Hialeah store to the corporation to be formed by the Garridos free and clear of any claims, security interests, liens and encumbrances pursuant to 11 U.S.C. § 363(b), with such claims and liens attaching to the proceeds of the sale.

The Court will enter six Orders, one for each store sale, in accordance with these findings of fact and conclusions of law.