In re L. S. GOOD & CO. et al., Debtors.

**In re L. S. GOOD & CO.**

**Bankruptcy No. 80–00253–W.**

United States Bankruptcy Court,
N. D. West Virginia.

Dec. 12, 1980.

Howard L. Sokolsky, Cleveland, Ohio, for debtor in No. 80–00253–W.

John J. Dilenschneider and Gordon Johnston, Porter, Wright, Morris & Arthur, Columbus, Ohio, for Creditors' Committee in No. 80–00253–W.

Charles J. Kaiser, Jr., Phillips, Gardill, Hazlett & Kaiser, Wheeling, W. Va., for Wheeling Dollar Savings & Trust Co. in No. 80–00253–W.

### MEMORANDUM OPINION

### I

JOHN H. KAMLOWSKY, Bankruptcy Judge.

L. S. Good & Co., a Delaware corporation, (hereinafter called Goods) filed a voluntary Chapter 11 petition in this District May 27, 1980. Goods is a holding company and its significant assets are its equity security holdings in nine wholly-owned subsidiaries, each of which has filed a voluntary Chapter 11 petition in this District. The principal business of seven of the subsidiaries was the operation of retail department stores in various communities located in Michigan, New York, Ohio, Pennsylvania and West Virginia. On August 29, 1980 Wheeling Dollar Savings & Trust Co., an unsecured creditor of Goods, filed a motion to convert the parent corporation from a Chapter 11 proceeding to a case under Chapter 7. On September 25, 1980 and September 26, 1980 hearing was had on the motion to convert this case under the provisions of 11 U.S.C. § 1112(b). At the conclusion of the presentation of testimony, the motion was taken under advisement by the Court. Now having fully considered the testimony, the exhibits presented, and taking judicial notice of the testimony and exhibits presented at the hearings held in the matters of L. S. Good & Co. and its subsidiaries since May 27, 1980, I find the facts to be as follows:

1. The voluntary Chapter 11 petition filed by Goods sets forth that the primary assets of Goods consist of its shareholder equity in the subsidiary corporations. Of its total assets of $15,752,088.19 as listed in the petition, $13,273,404.19 is set forth as the value of its interests in equity security of the subsidiaries.

2. An officer of Goods testified that the shareholder equity of Goods in its subsidiaries decreased from $8,201,036.00 on July 31, 1979 to $493,179.00 on July 31, 1980. This shareholder equity further decreased to a negative $520,614.00 on August 31, 1980.

3. On May 27, 1980 the inventory of all the Goods' subsidiaries had a combined book value of $14,371,000.00. As of September 12, 1980 the book value of the inventory was $8,614,413.00.

4. As of September 25, 1980, the date of the hearing, neither the parent nor any of the subsidiaries had access to new inventory financing. A representative of Price, Waterhouse, an accounting firm employed by Goods, testified that the amount of fresh cash necessary for any successful rehabilitation of Goods and its subsidiaries would be $4,200,000.00.

5. Howard L. Davidowitz, Chairman of the Retail Committee at Ernst & Whinney, employed by the various Creditors' Committees to review the operations of Goods and its subsidiaries, testified that he was of the opinion that neither Goods nor its subsidiaries are currently viable because the present mix of merchandise does not permit sufficient profits and the retail department stores are located in slow growth or depressed areas. Davidowitz further testified that inventory financing in excess of four million dollars is needed to rehabilitate the corporations and this rehabilitation process would require a minimum of two to three years.

6. Kann Corporation, a subsidiary, had ceased doing business prior to the filing of its voluntary petition on May 27, 1980 and as of that date, was not generating any income.

7. The primary function of Good Credit Corporation, a subsidiary, was to finance the accounts receivable of some of the subsidiaries of Goods as of May 27, 1980.

8. On June 13, 1980 this Court entered an Order authorizing The William F. Gable Company, one of the subsidiary corporations, to conduct a going-out-of-business sale at its sole retail department store located in Altoona, Pennsylvania. This sale has now been concluded and the store closed.

9. On October 23, 1980, The D. M. Christian Company, one of the subsidiary corporations, was converted from a case under Chapter 11 to a case under Chapter 7.

10. On October 30, 1980, L. W. Robinson Company and Smith, Bridgman & Company, subsidiary corporations, were converted from cases under Chapter 11 to cases under Chapter 7.

11. On October 30, 1980 a Chapter 11 trustee was appointed in the subsidiary corporation of Fowler, Dick & Walker, Inc.

12. On November 10, 1980 a Chapter 11 trustee was appointed in the subsidiary corporation of J. W. Knapp Company and on December 11, 1980 J. W. Knapp Company was converted from a case under Chapter 11 to a case under Chapter 7.

13. The only retail department stores presently being operated by a subsidiary debtor-in-possession are the two stores operated by Good's Department Stores, Inc.

14. Neither Goods nor the unsecured Creditors' Committee have proposed any plan of reorganization and none is contemplated.

## II

11 U.S.C. § 1112(b) states:

" . . . on request of a party in interest and after notice and a hearing, the court may convert a case under this chapter to a case under chapter 7 of this title or may dismiss a case under this chapter, whichever is in the best interest of creditors and the estate, for cause, including—

(1) continuing loss to or diminution of the estate and absence of a reasonable likelihood of rehabilitation;"

The voluntary Chapter 11 petition of Goods reveals that the principal assets of the parent corporation are its shareholder equity interests in the subsidiary corporations. As of August 31, 1980 the value of Goods' equity was a negative $520,614.00.

Of Goods' subsidiaries, the only one presently operating retail department stores as a debtor-in-possession is Good's Department Stores, Inc., and its operation consists of two stores—one located in Wheeling, West Virginia and the second located in St. Clairsville, Ohio. Four of the subsidiaries have been converted to Chapter 7, one subsidiary is presently being operated by a Chapter 11 trustee and the remaining subsidiaries have discontinued business. Obviously the value of Goods' equity has further diminished from the negative $520,614.00 value as of August 31, 1980.

The question arises as to whether there is reasonable likelihood of rehabilitation. Rehabilitation, as used in 11 U.S.C. § 1112(b)(1) means "to put back in good condition; re-establish on a firm, sound basis". 5 *Collier on Bankruptcy*, ¶ 1112.03(2) at 14 (15th Edition, 1980).

It was the opinion of the expert witness from Ernst & Whinney and the Financial

318

Vice President of Goods that a cash infusion of approximately four million dollars is necessary to rehabilitate the subsidiary corporations and the rehabilitation process would require a minimum of two to three years. As of this time, I am unaware of any sources offering to lend the capital essential to the rehabilitation and/or reorganization of Goods.

■ This Court is fully aware that the existence of one or more grounds for conversion as set forth in 11 U.S.C. § 1112(b) does not compel such action. The bankruptcy judge, in his sound discretion, must make the ultimate decision. *In re International Airport Inn Partnership*, 517 F.2d 510 (9th Cir. 1975).

■ In light of this fact, counsel for Goods urges that the Court not convert the case to a Chapter 7 case for the reason that a conversion would abort any reorganization effort. However, without necessary financing from third parties, the debtor and the creditors have no option except liquidation and liquidation is generally not the proper function of reorganization proceedings, but the function of Chapter 7 proceedings. *In re Pure Penn Petroleum Co., Inc.*, 188 F.2d 851 (2nd Cir. 1951). Debtors should not continue in control of their businesses under the umbrella of the reorganization court beyond the point at which reorganization no longer remains a realistic undertaking, unless liquidation would proceed more expeditiously and less expensively under the control of the debtor. There is nothing in the record of these proceedings to suggest that the debtor-in-possession is either better able or more motivated to proceed promptly with an efficient liquidation than is an experienced fiduciary whose commitment is to the promotion of parity among interested parties rather than to self-interest. There is every reason to believe that the substantial cost savings realized by minimizing the fees and expenses of debtor's counsel and the Creditors' Committee's counsel should more than offset the fees and expenses of a trustee. *Matter of Maplewood Poultry Co.*, 2 B.R. 545 (1980) (Bkrtcy.U.S.B.C.D.Me.)

I must conclude from a complete review of the record that there is a continuing loss to or diminution of the estate to the detriment of the creditors and equity shareholders and there is a complete absence of a reasonable likelihood of rehabilitation for the necessary fresh capital is unavailable. I am, therefore, of the opinion and do find that the motion of the unsecured Creditors' Committee should be granted and this case be converted from Chapter 11 to a case under Chapter 7. It is accordingly,

SO ORDERED.