**In the Matter of W. J. REWOLDT COMPANY, a Michigan corporation, Debtor.**

**Bankruptcy No. 82–02837–W.**

United States Bankruptcy Court, E. D. Michigan, S. D.

Aug. 20, 1982.

Robert A. Vieweg, Bloomfield Hills, Mich., for debtor.

Alan P. Goldstein, Southfield, Mich., for Creditors' Committee.

MEMORANDUM OPINION AND ORDER

GEORGE E. WOODS, Bankruptcy Judge.

I.

The creditors' committee of W. J. Rewoldt Company (Rewoldt) sought an order

pursuant to 11 U.S.C. § 1112(b) converting this Chapter 11 case to a Chapter 7. The order was granted at a hearing held on August 10, 1982. Upon the foregoing, the Court renders the following opinion.

## II.

Rewoldt, the debtor, is a Michigan corporation engaged in the operation of a mechanical contracting business. Charles R. Byrne, Sr., is the president of Rewoldt. Patricia Post is vice president-treasurer and the chief operating officer.

Rewoldt filed a voluntary Chapter 11 petition on May 14, 1982, and was appointed debtor in possession on May 21, 1982. Rewoldt's debts total $963,732.24.

An unsecured creditors' committee was established on June 4, 1982. On June 30, 1982, the committee sought an order converting the case to Chapter 7. As cause the creditors' committee alleged that: (1) the corporation was operating at a continuing loss; (2) it had no future business; (3) all of its accounts receivable had been assigned to a bank; (4) there were preferences during the year immediately preceding the filing of the petition to the officers and owners of the corporation; (5) no actions had been taken to collect claims of the corporation against third parties; (6) if the corporation continued to operate there would be a continuing loss to or diminution of the estate; and (7) there was no reasonable likelihood of rehabilitation.

On July 16, 1982, Rewoldt filed its response to the motion to convert. Rewoldt primarily argued that conversion was inappropriate as there existed no continuing loss to or diminution of the estate as required by § 1112(b)(1). Rewoldt further asserted that it could more efficiently handle the administration of three pending adversary proceedings than could a trustee.

With regard to its first argument, Rewoldt relied on an estimated statement of operations for the period ending September 30, 1982. The estimated statement projected an income of $21,376.39 against expenses of $15,000.00, for a gain of $6,376.39. The estimated statement contrasted sharply with the statement of operations submitted by Rewoldt for the period of May 14, 1982 to July 15, 1982. That statement indicated a gross profit of $12,714.13 and total expenses of $27,594.19, for a loss on operations of $14,880.06. The projected increase in income for the period ending September 30, 1982 was attributed by Rewoldt to the completion of two jobs, involving University-Liggett School and the United States Naval Reserve. The estimated decrease in expenses was attributed to Mr. Byrne's decision to forego the payment of rent and salary.

As to the second argument, Rewoldt emphasized that it was in the process of instituting three adversary proceedings involving: (1) a claim of $321,684.22 against the Department of Army Corps of Engineers; (2) a claim of $90,000.00 against the City of Detroit Housing Department; and (3) a claim of $250,000.00 against Darin and Armstrong. As of July 16, 1982, only the suit involving the Army Corps of Engineers had been filed.

On August 6, 1982, Rewoldt filed a plan of arrangement and liquidation and a disclosure statement. The disclosure statement recognized that the plan submitted was "primarily one of liquidation". The statement further provided, "[d]ebtor has no new work and given the current state of the economy can see no alternative to liquidation."

On August 10, 1982, a hearing was held on the issue of conversion. Ms. Post, as Rewoldt's chief operating officer, testified regarding the allegations set forth in the response. She further testified that Charles Byrne, Sr., is her father and that during the past year certain sums have been transferred to him as repayment on loans. Finally, Ms. Post testified that following completion of the University-Liggett and Naval Reserve projects business will cease as there are no prospects of any further or future contracts.

## III.

Section 1112(b) provides in pertinent part:

(b) Except as provided in subsection (c) of this section, on request of a party in interest, and after notice and a hearing, the court may convert a case under this chapter to a case under chapter 7 of this title or may dismiss a case under this chapter, whichever is in the best interest of creditors and the estate, for cause, including—

> (1) continuing loss to or diminution of the estate and absence of a reasonable likelihood of rehabilitation; . . .

Section 1112(b)(1) requires that the Court find both a "continuing loss to or diminution of the estate" and "absence of a reasonable likelihood of rehabilitation" or "cause". *In Re Tolco Properties, Inc.*, 6 B.R. 482 (Bkrtcy.E.D.Va.1980).

### A.

With regard to "continuing loss to or diminution of the estate", Collier's suggests the following guidelines:

> Obviously, if the debtor has a negative cash flow after entry of the order for relief in the chapter 11 case, the first of the two elements of section 1112(b)(1) is satisfied. Section 1112(b)(1) does not, however, specify that only cash losses are to be considered. Although the debtor may have a positive cash flow, the court should consider whether the debtor is suffering a loss by reason of actual depreciation in the value of property of the estate. The continuing loss or diminution standard set forth in section 1112(b)(1) requires the court to consider depreciation of assets in the economic, rather than accounting sense. A debtor which is operating at a loss according to generally accepted accounting principles may not fall within the "continuing loss" or "diminution of the estate" standards if .it can be established that the value of the debtor's assets is appreciating rather than depreciating.

5 *Collier on Bankruptcy* ¶ 1112.03[2][c][i] (15th ed. 1979).

As concerns "absence of a reasonable likelihood of rehabilitation", Collier's states:

> Under the standard contained in section 1112(b)(1), losses alone are not grounds for conversion. In order for the court to dismiss or convert under paragraph (1), the debtor's financial condition must be such as to permit the court to determine that there is no reasonable likelihood that the debtor will be rehabilitated. "Rehabilitate" has been defined to mean "to put back in good condition; re-establish on a firm, sound basis." Rehabilitation, as used in section 1112(b)(1), does not mean the same thing as reorganization, as such term is used in chapter 11. Since a debtor can be liquidated in chapter 11, the ability to confirm a plan of reorganization is considerably different than reaching a firm, sound financial base.

*Id.* at ¶ 1112.03[2][c][i] (footnotes omitted).

Rewoldt filed for bankruptcy on May 14, 1982. The statement of operations for Rewoldt from May 14, 1982 to July 15, 1982 indicates a loss of $14,880.06. The estimated statement of operations for Rewoldt for the period ending September 30, 1982 projects a gain of $6,376.39. However, Rewoldt admits it has no new work and no alternative to liquidation.

█ Rewoldt's intent to liquidate, coupled with its failure to obtain new business, indicates a prospective continuing loss. The business of this debtor is about to terminate; a decrease in the value of the estate is almost certain to follow. The Court is therefore of the opinion that the two-pronged requirement of § 1112(b)(1) has been satisfied.

### B.

█ Further, conversion is not limited to the grounds constituting "cause" described in § 1112(b)(1)–(6). *In Re Tolco Properties, Inc.*, 6 B.R. at 486. The Court is empowered to consider other factors and to use its equity powers to reach an appropriate result in a particular case. *In Re Mogul*, 17 B.R. 680, 8 B.C.D. 1024, 1026 (Bkrtcy.M.D. Fla.1982), *citing* H.R.Rep.No.595, 95th Cong., 1st Sess., 405–406 (1977), U.S.Code Cong. & Admin.News 1978, pp. 5787, 5963.

 A lack of good faith provides grounds for the Court to convert a case to the appropriate chapter pursuant to § 1112(b). *In Re Liberal Market*, 11 B.R. 742, 7 B.C.D. 451 (Bkrtcy.S.D.Ohio 1981). Good faith requires an intent to reorganize accompanied by a reasonable possibility of success. Honesty and good intentions are not sufficient. *In Re BBT*, 11 B.R. 224, 235 (Bkrtcy.D.Nev.1981). A debtor who files in Chapter 7 seeking only an "overly luxurious administrative vehicle" to achieve a liquidation more expeditiously accomplished in Chapter 7 is misusing the special remedy intended for reorganizations in Chapter 11. *In Re Liberal Market*, 11 B.R. at 745, 7 B.C.D. at 453.

Rewoldt in its disclosure statement admits that its plan, filed August 6, 1982, is "primarily one of liquidation" and that it has no option but to liquidate. A review of the record indicates that, from the date of filing, Rewoldt's intent to reorganize was not accompanied by a reasonable likelihood of success.

 Liquidation is not the proper function of reorganization proceedings, but the function of Chapter 7 proceedings. "Debtors should not continue in control of their businesses under the umbrella of the reorganization court beyond the point at which reorganization no longer remains a realistic undertaking, unless liquidation would proceed more expeditiously and less expensively under the control of the debtor." *In Re L. S. Good and Company*, 8 B.R. 315, 318 (Bkrtcy.N.D.W.Va.1980). Moreover, where the debtor is oblivious to fiduciary responsibilities imposed upon it in dealing with the property of the estate, conversion will normally be justified. *In Re Paul Kovacs and Company, Inc.*, 16 B.R. 203 (Bkrtcy.D.Conn. 1981).

Rewoldt, as debtor in possession, has failed to demonstrate that it is better able or motivated to proceed with an efficient liquidation than is an experienced trustee. The Court believes that the interest of the creditors may be jeopardized by allowing the debtor in possession to proceed with liquidation.

The motion for conversion from Chapter 11 to Chapter 7 is granted.

So ordered.