**In re ALL AMERICAN OF ASHBURN, INC., Debtor.**

**In re ALL AMERICAN HOUSING OF ALABAMA, INC., Debtor.**

**In re FAMILY HOMES SALES CENTER, INC., Debtor.**

**Bankruptcy Nos. 83–03719A, 83–03720A and 83–04266A.**

United States Bankruptcy Court, N.D. Georgia, Atlanta Division.

May 18, 1984.

C. Edward Dobbs, Parker, Hudson, Rainer, Dobbs & Kelly, Alfred S. Lurey, Kilpatrick & Cody, Atlanta, Ga., for petitioner, CIT.

Frank B. Wilensky, Macey & Sikes, Atlanta, Ga., for petitioner, ITT.

Gus H. Small, Jr., Zusmann, Small, Stamps & White, Atlanta, Ga., for debtors.

R. Neal Batson, Alston & Bird, Atlanta, Ga., for Creditors' Committee.

Stacey W. Cotton, Cotton, White & Palmer, P.A., Atlanta, Ga., Trustee.

## ORDER

W. HOMER DRAKE, Jr., Bankruptcy Judge.

On March 28, 1984, C.I.T. Corporation ("CIT") filed a Motion to Convert Cases to Chapter 7 pertaining to the above-referenced Chapter 11 bankruptcy proceedings. A Motion to Convert to Chapter 7 had previously been filed on February 8, 1984 by I.T.T. Diversified Credit Corporation ("ITT"), which motion was held in abeyance with the consent of the parties-in-interest. The ITT motion relates only to the Chapter 11 bankruptcy proceedings of All American of Ashburn, Inc. ("Ashburn") and All American Housing of Alabama, Inc. ("Alabama"). Both motions are presently before the Court and are herein collectively referred to as the "Conversion Motions". Objections to the Conversion Motions were filed by the Joint Committee of Creditors Holding Unsecured Claims ("Committee"); the Chapter 11 trustee for each of the above-referenced bankruptcy cases, Stacey W. Cotton, Esquire ("Trustee"); and the above-named debtors ("Debtors"). A hearing on the Conversion Motions was held on

May 3, 1984, following which this matter was taken under advisement.

Although the Conversion Motions have not been formally consolidated, the Court's Order herein addresses the merits of both Conversion Motions. The evidence presented and arguments made by the opposing parties did not distinguish between the Conversion Motions, and in the interest of judicial economy, all points pro and con have been taken into account by the Court to evaluate both Conversion Motions.

## LIQUIDATION PRIOR TO FORMULATION OF CHAPTER 11 PLAN

At the outset, the Court must consider the propriety of the Debtors' liquidating tangible assets under the auspices of Chapter 11 of the Bankruptcy Code without having first prepared a Chapter 11 plan and solicited acceptances thereto in accordance with § 1125 of the Bankruptcy Code. At present, the Debtors are undergoing liquidation. By the Trustee's assessment, there is only a "minimal prospect" that future business operations will be conducted by the Debtors. The same Trustee has been appointed in each of the above-referenced bankruptcy cases and has applied for leave of Court to sell all assets belonging to the Debtors. In short, CIT and ITT contend that these cases are in the posture of a Chapter 7 liquidation and would, therefore, be more economically and efficiently administered under Chapter 7.

Authority for the position stated in the Conversion Motions may be found in the case of *In re D.M. Christian Co.*, 7 B.R. 561 (Bkrtcy.N.D.W.Va.1980), wherein the Bankruptcy Court denied an application to purchase the entire inventory and all the fixtures belonging to the Chapter 11 debtor. The Court noted that the effect of granting the application would be a complete liquidation of the Chapter 11 debtor's tangible assets. The Court stated:

What is proposed here is a liquidation of the debtor's tangible assets under the provisions of Chapter 11. I am of the opinion that the Congress of the United States has mandated through the enact-

ment of 11 U.S.C. § 1125(b) that a condition precedent to a liquidating plan is the preparation of a written disclosure statement, approval of same by the Court, and the transmittal of the same to creditors.

*Id.,* at 562. The Court's holding was that liquidation may not be accomplished without strict compliance with 11 U.S.C. § 1125(b). *Id.* at 563.

■ However, *In re D.M. Christian Co.* is contrary to the weight of authority. Cases permitting liquidation under Chapter 11 prior to the acceptance of a Chapter 11 plan of liquidation include *In re WFDR, Inc.,* 7 BCD 514, 10 B.R. 109 (Bkrtcy.N.D. Ga.1981); *In re WHET, Inc.,* 12 B.R. 743 (Bkrtcy.D.Mass.1981); *In re Boogaart of Florida, Inc.,* 17 B.R. 480 (Bkrtcy.S.D.Fla. 1981); and *In re Alves Photo Service, Inc.,* 6 BCD 1187, 6 B.R. 690 (Bkrtcy.D.Mass. 1980). On the basis of the foregoing authority, the Court concludes that the Debtors may properly continue to liquidate under Chapter 11.

In *In re WFDR, Inc.,* this Court authorized the sale of the Chapter 11 debtor's principal asset, real and personal property comprising a radio station, pursuant to a Court-supervised bidding process commenced upon the Chapter 11 debtor's application to sell. Although the sale took place prior to the acceptance of a Chapter 11 plan, this Court determined that § 363(b) of the Bankruptcy Code expressly authorized such a sale other than in the ordinary course of business. It is noteworthy that the Court in *In re D.M. Christian Co.,* did not discuss the applicability or nonapplicability of § 363(b). *In re WHET, Inc.* is in full accord with the proposition that § 363(b) of the Bankruptcy Code provides clear authority for the sale of substantially all a Chapter 11 debtor's tangible assets in the absence of a confirmed plan providing for such sale. *In re WHET, Inc.,* 12 B.R. at 750 (citing *In re WFDR, Inc.*).

Similarly, the Court in *In re Boogaart of Florida, Inc.* relied upon § 363(b) of the Bankruptcy Code to permit liquidation, upon the Chapter 11 debtor's application to

sell, prior to the Court's approval of a disclosure statement and the confirmation of a plan of reorganization. However, a factor in that case which arguably is not present in the cases *sub judice* is that the assets were subject to rapid depreciation. The Court stated:

Where, as here, the value of assets is rapidly decreasing and the estates are suffering continuing losses, liquidation of assets prior to the proposal and confirmation of a plans of reorganization may be desirable because it will ultimately increase the amounts distributed to creditors after plans are confirmed. Accordingly, § 363(b) provides for a method whereby such liquidation can occur under Court supervision. The Court finds that liquidation of these assets prior to confirmation of plans, with the net proceeds to be deposited in an interest-bearing account and to be distributed pursuant to the plans, is appropriate in this instance.

*In re Boogaart of Florida, Inc.,* 17 B.R. at 483–484. Because the decision in *Boogaart* did not turn upon the fact that the assets were rapidly depreciating, that same opinion lends support to the position that liquidation by the Chapter 11 Trustee herein is proper.

The most extensive discussion of the so-called pre-plan Chapter 11 liquidation is found in *In re Alves Photo Service, Inc.* The Chapter 11/Chapter 7 dilemma was posed to the Court in *Alves Photo,* as in the cases *sub judice,* upon a motion to convert the Chapter 11 proceeding to a case under Chapter 7. Therefore, the Court in *Alves Photo* first looked to § 1112(b) of the Bankruptcy Code to decide the conversion question. The posture of the *Alves Photo* relative to *Boogaart* is significant in the respect that those opinions gave seemingly contrary significance to the fact that the Chapter 11 debtor's assets were or might be subject to rapid depreciation.

■ As indicated above, the Court in *Boogaart* stated that the fact that the Chapter 11 debtor's assets were rapidly decreasing in value militated in favor of permitting a sale of substantially all the

Chapter 11 debtor's assets prior to the acceptance of a Chapter 11 plan. Conversely, as set forth below, the Court in *Alves Photo* stated that the prospect of continuing diminution of the Chapter 11 debtor's estate is a consideration that weighs in favor of conversion of the Chapter 11 proceeding to a case under Chapter 7. Lest this Court be charged with following opposing authority, the following explanation is offered: The Court in *Boogaart* was correct to permit the sale of liquidation under Chapter 11 prior to the acceptance of a Chapter 11 plan so that further diminution of the Chapter 11 estate would not occur. However, in the context wherein an application to sell is juxtaposed against a motion to convert the Chapter 11 proceeding to a case under Chapter 7, § 1112(b) should guide the Court's exercise of its discretion regarding the motion to convert.

Similarities between *Alves Photo* and the cases *sub judice* are as follows: (1) Sales of the Debtors' assets were undertaken because rehabilitation was not economically feasible; (2) Substantial sales had occurred at the time the Court was confronted with the motion to convert; (3) Additional sales remained to be completed; (4) Pending and potential litigation awaited resolution; (5) The partial liquidation conducted through the Court's resolution of the motion to convert had not produced a diminution in the value of the bankruptcy estate; and (6) The assets of the bankruptcy estate were not subject to rapid depreciation. The Court in *Alves Photo* noted that the question of conversion of a Chapter 11 proceeding to a case under Chapter 7 should be decided on the basis of the facts of the particular case. *Id.* at 1190, 6 B.R. 690. Accordingly, the Court's decision herein cannot be based solely on the similarities of these cases with *Alves Photo* without first examining *all* the circumstances of the cases before the Court. Only if this Court concludes, as did the Court in *Alves Photo,* that conversion would not be in the best interest of creditors and the estate shall the Conversion Motions be denied.

Certain holdings expressed in *Alves Photo* are approved by this Court and adopted

herein. Two such holdings relate to interpretations of § 1112(b) of the Bankruptcy Code. Section 1112(b) states as follows:

(b) Except as provided in subsection (c) of this section, on request of a party in interest, and after notice and a hearing, the court may convert a case under this chapter to a case under chapter 7 of this title or may dismiss a case under this chapter, whichever is in the best interest of creditors and the estate, for cause, including—

(1) continuing loss to or diminution of the estate and the absence of a reasonable likelihood of rehabilitation;

(2) inability to effectuate a plan;

Subsection (b) of Bankruptcy Code § 1112 enumerates seven other factors for which the Court may convert or dismiss a Chapter 11 proceeding, none of which are applicable to the cases *sub judice.*

The first holding from *Alves Photo* adopted by this Court is that no cause for conversion exists under subsection (1) of § 1112(b) where there has been no loss or diminution of the estate during the Trustee's administration. Accord: *In re Tracey Service Co., Inc.,* 17 B.R. 405, 409 (Bkrtcy. E.D.Pa.1982) ("... the creditor has alleged that there is no likelihood of rehabilitation. In addition, the movant must show a continuing loss to the estate."); *In re W.J. Rewoldt Co.,* 22 B.R. 459, 461 (Bkrtcy.E.D. Mich.1982) ("Section 1112(b)(1) requires that the Court find both a 'continuing loss to or diminution of the estate' and 'absence of a reasonable likelihood of rehabilitation' or 'cause'.") The second holding adopted from *Alves Photo* is that no cause for conversion exists under subsection (2) of § 1112(b) where a Chapter 11 plan may be provided for the declaration of a dividend following liquidation of the Chapter 11 Debtor's assets.

The final holding from *Alves Photo* adopted by this Court is that, consistent with all the foregoing authority with the exception of *In re D.M. Christian Co.,* the fact that a Chapter 11 debtor is conducting a liquidation without a preexisting plan

does not automatically require conversion of the case to Chapter 7.

The determinative analysis leading the Court in *Alves Photo* to conclude that conversion was not proper was a comparison of the relative costs of administrative expenses in the Chapter 11 case versus administrative expenses that would arise in a Chapter 7 case. The Court conducted that analysis in order to comply with the confirmation standard of § 1129(a)(7) of the Bankruptcy Code, which states as follows:

With respect to each class—

(A) each holder of a claim or interest in such class—

(i) has accepted the plan; or

(ii) will receive or retain under the plan on account of such claim or interest property of a value, as of the effective date of the plan, that is not less than the amount that such holder would so receive or retain if the debtor were liquidated under Chapter 7 of this title on such date.

■ This Court agrees that an inquiry into the relative administrative costs is dispositive of the merits of conversion where, by all other indicia, the cases would proceed identically through liquidation under either Chapter. This Court begs to differ, however, with the assessment that § 1129(a)(7) mandates this analysis. Because no Chapter 11 plan has yet been proposed, a discussion of confirmability is premature. Nevertheless, the relative administrative expenses under Chapter 11 versus Chapter 7 must be considered to decide whether the Conversion Motions make a sufficient showing under the "for cause" criterion of § 1112(b).

Having determined that a Chapter 11 plan of distribution *may* be proposed and that continuing in Chapter 11 would not constitute an abuse of the reorganization procedures where liquidation has substantially been completed without a plan, the Court proceeds to address the question of whether conversion to Chapter 7 would be more time and cost efficient under the particularities of these cases.

## ADMINISTRATIVE EXPENSES UNDER CHAPTER 11 VERSUS CHAPTER 7

■ CIT has an acute interest in controlling the administrative costs of these bankruptcy proceedings. Pursuant to a Consent Order entered on August 23, 1983, CIT was granted a first priority security interest against a majority of the Debtors' assets which were not already encumbered by a first position lienholder. CIT voluntarily subordinated its lien, however, to the payment of the costs of administering the bankruptcy cases. Therefore, CIT is the creditor most directly affected by the accrual of administrative expenses. ITT, on the other hand, simply holds an unsecured claim, but, due to the magnitude of the claim, ITT would likely receive one of the largest pro rata distributions to unsecured claimants if any funds remain unencumbered by CIT's lien after the payment of administrative expenses.

On its face, Chapter 7 offers a more streamlined procedure for conducting a bankruptcy liquidation. First, conversion of the case to Chapter 7 would eliminate the role of the Committee and would limit the role of the Debtors' counsel. To paraphrase the statement of CIT's counsel, two tiers of administrative expenses would be eliminated by conversion. Second, the expense of preparation of the disclosure statement and Chapter 11 plan would similarly be eliminated, as would the expense of hearings on the disclosure statement and confirmation of the Chapter 11 plan.

However, the Court must inquire further into the individual circumstances of the above-referenced bankruptcy cases. The Ashburn and Alabama proceedings were commenced on August 18, 1983, and Family Homes Sales Center, Inc. ("Family Homes") filed its Chapter 11 petition on September 23, 1983. Yet, the Trustee was not appointed until February 21, 1984 in the Ashburn and Alabama cases and thereafter in the Family Homes case on March 22, 1984. Prior to bankruptcy, Ashburn and Alabama had combined annual gross sales in the amount of $100 million, which

indicates the overall size of these related bankruptcy cases.

Prior to and after the filing of the above-referenced bankruptcy cases, CIT was the Debtors' principal lender. As set forth in the Joint Motion for Order Directing Howard Chiluski, as a Representative of C.I.T. Corporation, to Appear for Examination and to Produce Documents Pursuant to Bankruptcy Rule 2004 filed by the Debtors, the Committee and the Trustee, an investigation has been commenced with respect to the allegation that CIT may have committed illegal, inequitable or improper acts either prior to and/or after the filing of the above-referenced bankruptcy cases. The primary reason for denying the Conversion Motions is the existence of this potential claim against CIT.

At this time, the Court is unable to determine the probability that the Trustee will succeed in pursuing the claim against CIT or the potential yield of a successful prosecution of that claim. It is within the Trustee's sound discretion, however, to pursue this claim so long as the reasonably expected benefits exceed the reasonably expected costs. The Trustee has indicated that he would pursue the claim against CIT with equal enthusiasm whether the case were under Chapter 11 or Chapter 7. The Court determines that the investigation of this claim would be more efficiently conducted if the case remained under Chapter 11.

Counsel for the Committee has been involved in this case from the time shortly after the Ashburn and Alabama cases were filed. In addition, counsel for the Committee has already begun assisting the Trustee in his investigation of the potential claim against CIT. Of particular significance is the role of counsel for the Committee in the voluminous production of documents that accompanied the aforementioned Rule 2004 examination of Howard Chiluski. To discard the knowledge of counsel for the Committee at this stage could only result in a multiplication of administrative expenses, because the Trustee's counsel would have difficulty gaining comparable familiarity with the case during the remainder of the bankruptcy proceedings. The same economy exists with respect to the Debtors' counsel, insofar as the investigation of the possible claim against CIT is concerned.

Beyond the scope of assisting the Trustee to investigate the possible claim against CIT, the activities of counsel for the Committee and counsel for the Debtors shall be sharply curtailed. For instance, counsel for the Committee cannot reasonably be expected to be compensated as an administrative expense for attending any future hearings that might arise on the Trustee's application to sell assets. Given the small potential dividend to unsecured creditors in the absence of successful prosecution of the claim against CIT, the "necessity" of such services by counsel for the Committee is presumptively nonexistent. See 11 U.S.C. § 330(a)(1). Of course, the Committee would prefer that its counsel remain actively involved in these cases. However, because CIT is positioned such that it bears practically the entire brunt of administrative expenses, the Court must affirmatively intervene to guide counsel for the Committee as to what the Court is predisposed to find to be reasonable services. In short, these cases will remain in Chapter 11 so that counsel for the Committee may lend their acquired expertise to the Trustee so as to enable the Trustee to operate more efficiently.

Additionally, counsel for the Debtors may assume the same role in assisting the Trustee to efficiently carry out his duties. The accrual of attorneys' fees by counsel for the Debtors should not be much greater than would occur in a proceeding under Chapter 7. Because the Trustee is conducting the liquidation, the resulting Chapter 11 plan and disclosure statement will be much simpler than in the case of an ongoing enterprise.

## CONCLUSION

The Court concludes that the potential claim against CIT represents an asset of the estate which, in the event that the Trustee decides to pursue the claim, should be pursued in the most efficient manner.

Through the efforts of counsel for the Committee and counsel for the Debtors, the Trustee will have the necessary manpower and expertise at his disposal. Should the claim prove successful, ITT may be one of the benefactors of this Court's decision to keep these cases under Chapter 11.

The ultimate control over administrative expenses incurred by professional persons lies with this Court under § 330 of the Bankruptcy Code. Hereafter, the Court will apply the strictest scrutiny to the *necessity* of professional services rendered by counsel for the Committee and counsel for the Debtors.

CIT cites two cases in the brief in support of its conversion motion which suggest, according to CIT's interpretation, that it is either improper or illogical for the Court to permit a liquidation to take place under Chapter 11. *In re W.J. Rewoldt*, 22 B.R. 459 (Bkrtcy.E.D.Mich.1982); *In re Tracey Service Co., Inc.*, 17 B.R. 405 (Bkrtcy.E.D.Pa.1982). However, in *Rewoldt* no trustee had been appointed in the Chapter 11 case. The Court described the proposed Chapter 11 plan of liquidation an "overly luxurious administrative vehicle", *In re J.W. Rewoldt Co.*, 22 B.R. at 462, but also justified conversion to Chapter 7 on the ground that "Redwoldt, as debtor in possession, has failed to demonstrate that it is better able or motivated to proceed with an efficient liquidation than is an experienced trustee." *Id.* Of course, an extremely capable Trustee is at the helm of the instant Chapter 11 cases. *Tracey* is also distinguishable because the Court therein found *both* a continuing diminution of the estate *and* the absence of any reasonable likelihood of reorganization. *In re Tracey Service Co., Inc.*, 17 B.R. at 409.

Authority cited by the Court indicates that there is no per se prohibition against the Court's permitting a Chapter 11 liquidation without a Chapter 11 plan. The result reached herein is intended to maximize the potential return to all creditors while minimizing to the extent possible the administrative expenses that must be borne by CIT.

In accordance with the foregoing, the Conversion Motions shall be and are hereby DENIED.

IT IS SO ORDERED.